IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| *In re*: <br><br> COMMERCE LLC, <br><br> *Debtor.* | Case: 13–12598 <br><br> Chapter 7 |
| ZVI GUTTMAN, Chapter 7 Trustee for the Bankruptcy Estate of Commerce, LLC, *et al*. <br><br> *Plaintiffs* <br><br> –v– <br><br> SAUL EWING LLP, *et al.*, <br><br> *Defendants.* | Adversary Proceeding No. _____ |

**NOTICE OF REMOVAL**
**(Jury Demand)**

Pursuant to 28 U.S.C. §§ 1334 and 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure, Defendants Saul Ewing LLP and Gary Eidelman hereby remove to this Court, from the Circuit Court for Baltimore City, Maryland, all claims (the "Claims") raised in the action styled *Zvi Guttman, Chapter 7 Trustee for The Bankruptcy Estate of Commerce, LLC, et. al.* v. *Saul Ewing, LLP, et al.* ("*Guttman* v. *Saul Ewing*"), Case No. 24-C-15-000154. In support of removal, Defendants state as follows:

**I.     BACKGROUND**

1.     Until its recent liquidation, Commerce LLC ("Commerce" or "Debtor") was a single member limited liability company that operated as a distributor of lawn, garden, and holiday decorating products. Its principal place of business was at 7603 Energy Parkway, Baltimore, Maryland 21226. The sole member of the Debtor is a Maryland corporation, plaintiff

Commerce Corp. The principal owner of Commerce Corp. is plaintiff Richard Lessans ("Lessans"). On February 15, 2013 (the "Petition Date"), certain creditors of Commerce filed an involuntary petition for relief in this Court under Chapter 7 of the Bankruptcy Code, Case No. 13-12598. The bankruptcy case was converted to a Chapter 11 case on March 14, 2013, and reconverted to a Chapter 7 case on May 9, 2013. On May 10, 2013, Zvi Guttman, Esquire ("Trustee"), was appointed Trustee of the Debtor's bankruptcy estate.

2. Saul Ewing LLP ("Saul Ewing") is a regional law firm that maintains an office in Baltimore, Maryland. At various times prior to the Petition Date, Saul Ewing represented Debtor and/or its parent company, Commerce Corp. At the time of the bankruptcy filing, Commerce LLC owed $25,761.72 to Saul Ewing for services rendered between December 2012 and January 2013. Accordingly, on September 4, 2013, Saul Ewing filed a proof of claim against the estate with this Court. That proof of claim remains pending.

3. On August 6, 2013, the Trustee filed with this Court an Application for Authority to Employ Special Counsel for the Trustee on Contingent Fee Basis (the "First Application") to investigate and "bring a claim against the accounting firm of Clifton Larson Allen LLP, as the successor to Clifton Gunderson, and any relevant predecessor, successor, or related entities and individuals, for damages caused to the debtor, Commerce, LLC" (ECF No. 195). The Trustee's proposed special counsel were Arnold M. Weiner, Alan M. Rifkin, Aron U. Raskas, and Barry L. Gogel of the law firm of Rifkin, Weiner, Livingston, Levitan & Silver, LLC (the "Rifkin firm"). The First Application was granted on August 28, 2013 (ECF No. 206).

4. At some point before February 2014, the Rifkin firm expanded its representation of the Trustee to include other potential claims and other clients. In addition to representing the Trustee, the Rifkin firm began representing Lessans and Commerce Corp., the sole member of

Commerce LLC.  Lessans is a citizen of the state of Maryland, and was the Chief Executive Officer of both Commerce LLC and Commerce Corp.  At the time of the bankruptcy petition, Lessans owned more than 60% of the equity of Commerce Corp.  Lessans also is a substantial creditor of the Debtor, having filed a proof of claim against the Debtor's estate on August 20, 2013 in the amount of $1,430,156.49 (ECF Claim No. 179-1).

5.  On December 10, 2014, the Trustee filed an Amended Application for Expanded Authority to Employ Special Counsel for Trustee on Contingent Fee Basis, this time to investigate and file a complaint on behalf of the Trustee against "another professional and his firm for damages caused to the debtor . . . as a result of malpractice and/or negligence or professional mishandling of matters" (ECF No. 464) (the "Amended Application").  The investigation in question had already been underway for many months before the Amended Application was filed.  The "professional" referred to in the Amended Application is defendant Gary Eidelman and the "firm" is defendant Saul Ewing.

6.  Nowhere in the Amended Application, however, did the Trustee disclose that the Rifkin firm, in addition to representing the Trustee, also was representing Lessans and Commerce Corp.  Nor did the Trustee disclose that the interests of Lessans and Commerce Corp. may be adverse to those of the Trustee in this very matter, as explained below.

7.  Accompanying the Amended Application was a Verified Statement of Counsel executed by Arnold Weiner ("Weiner Statement").  The full text of the Weiner Statement was as follows:

> I, Arnold M. Weiner, a principal of the law firm of Rifkin, Weiner, Livingston, Levitan & Silver, LLC (the "Firm") state:
>
> 1.  I am an attorney duly admitted to practice law in the State of Maryland and before this Court and attorneys employed by the Firm are admitted to the United States District Court for the District of Maryland.

3

4803843.1

2. I, the Firm and its attorneys:

A. Do not have any connections with the Debtor, Trustee, creditor or any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee except as set forth in Exhibit "1" hereto;

B. Represent no interest adverse to the estate;

C. Have not served as an examiner in connection with this bankruptcy case;

D. Are "disinterested persons" within the meaning of Section 101(14) of the Bankruptcy Code and are eligible to serve as an attorney for the Trustee.

(ECF No. 464-2, at 3-4). Nowhere in the Weiner Statement did the Trustee's counsel disclose that the Rifkin firm, in addition to representing the Trustee, also was representing Lessans and Commerce Corp. in the same matter.

8. The Weiner Statement attached as "Exhibit 1" a list that purported to disclose the "entities that are creditors of the Debtor" which the Rifkin firm "has represented . . . in unrelated matters" (ECF No. 464-2, at 5). Nowhere in this Exhibit did the Rifkin firm disclose its representation of Lessans, even though Lessans at the time was a significant "creditor of the Debtor," and the Rifkin firm was representing him in this matter.

9. The Amended Application also enclosed an Amended Contingency Fee Representation Agreement (ECF No. 464-2 at 1-2) ("Rifkin Engagement Agreement"), reflecting the engagement agreement between the Rifkin firm and the Trustee. The Rifkin Engagement Agreement also did not disclose to the Court the Rifkin firm's simultaneous representation of Lessans and Commerce Corp. The Amended Application was granted on December 29, 2014, in an order (ECF No. 467) that expressly approved the Rifkin Engagement Agreement.

10. On January 14, 2015, the Trustee, along with Commerce Corp. and Richard Lessans ("Plaintiffs"), all represented jointly by the Rifkin firm, filed a Complaint in the Circuit Court for Baltimore City, against Saul Ewing and Gary Eidelman ("Defendants"). Plaintiffs assert four counts, each against both Saul Ewing and Gary Eidelman: (1) negligence – legal malpractice; (2) breach of agency contract; (3) constructive fraud; and (4) intentional concealment. Plaintiffs' allegations arise out of a lengthy letter that Commerce's former Chief Financial Officer, Bryant O'Kane, sent to Commerce's Director of Human Resources in April 2011, which contained detailed allegations of sexual harassment and a hostile work environment. O'Kane's letter mentioned in passing that he had "c[o]me across information suggesting that Mr. Cork may be concealing" from Mr. Lessans a fully documented $450,000 loan that Malcomb Cork, Commerce's General Manager and President, had received from Commerce. The essential theory of Plaintiffs' Complaint is that when Mr. Eidelman, an employment lawyer engaged to represent Commerce in connection with investigating and defending Mr. O'Kane's sexual harassment and hostile work environment claims, learned of O'Kane's separate accusation regarding Cork, Saul Ewing should have conducted an investigation into Cork and into whether the loan had been adequately disclosed to and/or authorized by Lessans. Plaintiffs further allege that if Saul Ewing had conducted such an investigation, Commerce somehow would have taken steps to avoid bankruptcy over a year later, preserve substantial value, and maintain the ability to pay its creditors. Defendants dispute Plaintiffs' Claims, and their convoluted theories of proximate cause and damage, as well as many of the alleged facts underlying the Complaint.

## II.    GROUNDS FOR REMOVAL

11. The Claims are civil proceedings which arise under Title 11, or arise in or are related to a case under Title 11, and thus this Court and/or the United States District Court for the

District of Maryland has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1334 and 1452, for the following reasons.

      **A.     This Is A "Core" Bankruptcy Matter For Removal Purposes.**

12.     A proceeding triggers the bankruptcy court's "core" jurisdiction if the proceeding "aris[es] under title 11" or "aris[es] in" a case under Title 11. 28 U.S.C. § 157 contains a non-exclusive list of sixteen types of proceedings that are "core." Plaintiffs' claims here trigger the Court's "core" jurisdiction for at least two reasons: the Claims are "counterclaims by the estate against persons filing claims against the estate," 28 U.S.C. § 157(b)(2)(C), and the proceeding involves "matters concerning the administration of the estate," *id.* § 157(b)(2)(A). The Claims may also be regarded as core proceedings under § 157(b)(2)(O), in that they will affect "the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship," and they are not "personal injury tort or wrongful death claims." In addition, under 28 U.S.C. § 1334(e)(2), the federal district court has exclusive jurisdiction "over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327," as the claims do in this case. *See* § II.B, *infra*.

          *i.     Counterclaims By The Estate Against Persons Filing Claims Against The Estate*

13.     As noted above, Saul Ewing LLP filed a proof of claim in this Court on September 4, 2013, for approximately $25,000 in unpaid invoices. Where, as here, a creditor files a proof of claim and the trustee then sues the creditor, whether in state or federal court, the trustee's claim falls squarely within the bankruptcy court's "core" jurisdiction as a "counterclaim[] by the estate against persons filing claims against the estate."

28 U.S.C. § 157(b)(2)(C).  *See Residential Funding Co., LLC* v. *UBS Real Estate Securities, Inc. (In re Residential Capital, LLC*), 515 B.R. 52, 59-66 (Bankr. S.D.N.Y. 2014).

### ii. Matters Concerning The Administration of the Estate

14. Plaintiffs' Claims also are "matters concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A), because Plaintiffs have engaged counsel to represent them in this matter in apparent violation of 11 U.S.C. § 327 and Bankruptcy Rule 2014(a).  Moreover, as described in Part B below, only this Court and the federal district court are in a position to adjudicate the apparent violations of the bankruptcy statute and the Bankruptcy Rules and determine an appropriate remedy.  28 U.S.C. § 1334(e)(2).

15. A trustee may engage counsel to "represent or assist the trustee in carrying out the trustee's duties under this title."  11 U.S.C. § 327(a).  Such "general" counsel:  (1) must "not hold or represent an interest adverse to the estate," and (2) must be a "disinterested person."  *Id.* § 327(a).  Alternatively, the trustee may engage counsel "for a specified special purpose."  *Id.* § 327(e).  Such "special" counsel need not be a "disinterested person" but still must "not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."  *Id.*  "Special" counsel also may only be appointed under § 327(e) if the counsel previously represented the debtor.[1]

16. Regardless of whether subsection (a) or (e) applies to the Rifkin firm's representation of the Trustee, it is prohibited from "represent[ing] . . . an[] interest adverse to the

---

[1] The Trustee's Amended Application and the Weiner Statement appear to assume, correctly, that to qualify as counsel for the trustee in this matter, the Rifkin firm must satisfy § 327(a), because § 327(e) applies by its plain terms only where the proposed special counsel represented the debtor *prior to* the filing of the bankruptcy petition.  *See* 11 U.S.C. § 327(e) (applying only where the attorney "has represented the debtor"); Weiner Statement (ECF No. 464-2 at 3) (attesting that the Rifkin firm and its attorneys are "disinterested persons" and "[r]epresent no interest adverse to the estate").  *See also Meespierson Inc.* v. *Strategic Telecom Inc.*, 202 B.R. 845, 848 (Bankr. D. Del. 1996); *In re Abrass*, 250 B.R. 423, 435 (Bankr. M.D. Fla. 2000); *In re Ginco*, 105 B.R. 620, 621 (D. Colo. 1988).

7

debtor or to the estate." *Id.* § 327(a), (e). "[T]he adverse interest test is objective and precludes 'any interest or relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'" *In re Heritage Land, LLC*, 2011 WL 3240589, at *2 (Bankr. D. Md. July 28, 2011) (quoting *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998)).

17. There are several ways such impermissible adverse interests may arise in this matter. For example, where there is a realistic possibility that the trustee could or should investigate and pursue cross-claims against a co-party, that co-party's counsel is disqualified from representing the trustee or the debtor. *See, e.g.*, *Shaw & Levine* v. *Gulf & Western Indus., Inc.* (*In re Bohack Corp.*), 607 F.2d 258, 263-64 (2d Cir. 1979); *In re Granite Partners*, 219 B.R. at 37; *Meespierson*, 202 B.R. at 848; *In re Argus Group 1700, Inc.*, 199 B.R. 525, 531 (Bankr. E.D. Pa. 1996); *In re F&C Int'l, Inc.*, 159 B.R. 220, 222 (Bankr. S.D. Ohio 1993); *In re Ginco, Inc.*, 105 B.R. 620, 621 (D. Colo. 1988); *In re Baldwin-United Corporation*, 45 B.R. 378, 379 (Bankr. S.D. Ohio 1983). An analogous conflict arises where there is a possibility that an opposing party will bring counterclaims against the trustee's co-client, and/or assert a defense of contributory negligence, in which the trustee's interests would diverge from those of his or her co-client. *See In re Southern Kitchens, Inc.*, 216 B.R. 819, 826-28 (Bankr. D. Minn. 1998).

18. Here, Defendants will raise contributory negligence as a defense, alleging that Lessans, Commerce Corp. and Commerce LLC were each contributorily negligent by taking a variety of unreasonable, wrongful and/or unlawful actions that contributed to the eventual demise of Commerce LLC. Defendants also will file counterclaims against Lessans and Commerce Corp. for contribution and indemnification, alleging in particular that Lessans breached his duties of loyalty to Commerce and engaged in constructive fraud. Defendants will

assert that Lessans's breaches of duty directly led to Commerce LLC having to make payments in excess of $10 million between 2009 and 2012, with respect to the settlement of claims based on wrongful acts committed by Lessans himself. These actions by Lessans, without regard to the approximately $1 million in Commerce funds owed and/or misdirected by Cork, caused or, at the very least, contributed to Commerce's eventual financial collapse. Defendants also will contend that Lessans breached his duty of care and grossly mismanaged Commerce by the actions and omissions that will be set forth in Defendants' counterclaims.

19.     In addition, Commerce Corp. owed a duty to Commerce LLC not to engage in any actions or omissions with respect to Commerce LLC that were fraudulent, taken in bad faith, or constituted gross negligence. Commerce Corp. violated that duty through, among other things, the fraudulent actions of Malcomb Cork, in his role as President of Commerce Corp.; the gross negligence of other officers and senior managers in failing to alert Lessans and Commerce LLC to what they knew or suspected about the actions of Cork, during the period in which Cork served as the President of Commerce Corp. and General Manager of Commerce LLC; and the failure of Lessans himself and other officers and senior managers of Commerce Corp. to prevent Lessans and Cork from harming Commerce LLC.

20.     The same breaches of duty by Lessans and Commerce Corp. that will form the basis for Saul Ewing's contributory negligence defense and contribution and indemnification counterclaims would also normally form the basis for meritorious cross-claims the Trustee could bring against his co-party plaintiffs, Lessans and Commerce Corp. For these reasons, the Rifkin firm currently "represent[s] . . . an[] interest adverse to the debtor or to the estate" in violation of 11 U.S.C. §§ 327(a) and (e).

21. In addition, the Trustee and the Rifkin firm have violated Bankruptcy Rule 2014(a) by failing to disclose the Rifkin firm's simultaneous representation of Lessans and Commerce Corp. Rule 2014(a) requires that a trustee and the trustee's proposed counsel state, among other things, "the person's connections with the debtor, creditors, [and] any other party in interest." This disclosure requirement is broad, and purposefully so, "go[ing] to matters substantially broader than those contemplated by either §§ 327(a) or 327(e)." *In re Southern Kitchens*, 216 B.R. at 829. "Regardless of how attenuated such connections may be, they must be revealed in the statement . . . to allow interested parties—including the Court and the United States Trustee—to thoroughly evaluate the proposed professional's status for any conceivable conflict or other disqualifying factor under those statutes." *Id.* The Trustee and the Rifkin firm apparently have disregarded this Rule by failing to disclose to this Court the Rifkin firm's longstanding "connections" with Lessans and Commerce Corp., and indeed by attesting that the Rifkin firm does *not* "have any connections with the Debtor, Trustee, creditor or any other party in interest." Weiner Statement (ECF No. 464-2), at 3.

22. For these reasons, among others, Defendants may seek the disqualification of the Rifkin firm or other appropriate relief. Because adjudication of that matter will require this Court to decide a "matter concerning the administration of the estate," this Court alternatively has "core" jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A).

> iii. *Proceedings Affecting the Adjustment of the Debtor-Creditor or Equity Security Holder Relationships*

23. The Claims filed by Plaintiffs have been filed on behalf of the Bankruptcy Trustee; on behalf of Richard Lessans, who is both an equity holder of the sole owner of the Debtor and a substantial creditor of Commerce; and on behalf of Commerce Corp., which is the only member and equity security holder of Commerce. These Claims suggest that the Plaintiffs

4803843.1

collectively are seeking some form of recovery from the Defendants for both the equity value of Commerce LLC and for the value of the claims advanced by numerous unsecured creditors of Commerce, including Lessans. The defenses and counterclaims to be filed by the Defendants, described above, and the cross-claims that the Trustee apparently has determined not to pursue against Lessans and Commerce Corp., all implicate the appropriate adjustment of the debtor-creditor and equity security holder relationships within this bankruptcy estate. As such, and as described by 28 U.S.C. § 157(b)(2)(O), the Claims fall within another statutorily-defined basis for core bankruptcy jurisdiction.[2]

> **B.    There Is Exclusive Federal Jurisdiction Over This Proceeding Because It "Involve[s] Construction Of" 11 U.S.C. § 327 And Its Disclosure Rules.**

24.    For the same reasons that this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) as a "matter[] concerning the administration of the estate," exclusive federal jurisdiction exists under 28 U.S.C. § 1334(e)(2). That subsection provides that "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction . . . over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327."

25.    This proceeding falls squarely within the exclusive federal jurisdiction conferred by § 1334(e)(2). For the reasons stated above, the Rifkin firm's representation of parties holding

---

[2] Although this Court's jurisdiction is "core" for removal purposes (as well as abstention purposes), Plaintiffs' claims are not ones over which this Court has authority to enter final orders or a judgment absent the parties' consent. *See Stern* v. *Marshall*, 131 S. Ct. 2594 (2011); *Residential Funding Co.*, 515 B.R. at 66 (holding that although the bankruptcy court had "core" jurisdiction against the creditor that had filed a proof of claim for purposes of establishing federal jurisdiction over the proceeding and for abstention purposes, the court must proceed "*as if* the claim was non-core" for Article III purposes, *i.e.*, the bankruptcy court could not itself enter final judgment on the trustee's claims) (emphasis added). As noted below, Defendants do not consent to entry of final orders or judgment by this Court, and may seek withdrawal of the reference of this case so that it can be adjudicated by the United States District Court. *See* ¶ 31, *infra*.

interests adverse to those of the estate, and its failure to disclose its representation of those parties at the time of its application for employment, will require this Court to interpret 11 U.S.C. § 327, its disclosure rules, and by extension Bankruptcy Rule 2014—and to frame an appropriate remedy for the Rifkin firm's apparent violations of these provisions. Accordingly, there is exclusive federal jurisdiction over this aspect of Plaintiffs' Claims.

### C. This Court Also Has "Related To" Bankruptcy Jurisdiction.

26. The Bankruptcy Court also has jurisdiction over the Claims as ones that "relate[] to" a case "under title 11." 28 U.S.C. § 1334(b). Where a bankruptcy case is pending, the federal courts have "related to" jurisdiction over any civil proceeding where "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Owens-Illinois, Inc.* v. *Rapid Am. Corp.* (*In re Celotex Corp.*), 124 F.3d 619, 625 (4th Cir. 1997) (quoting *Pacor, Inc.* v. *Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)) (emphasis omitted). "[T]he proceeding need not necessarily be against the debtor or against the debtor's property." *Id*. Rather, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id*. at 625-26.

27. Here, the Trustee's claims were owned by the Debtor pre-petition, and resolution of those claims "could conceivably have an[] effect on the estate" and clearly "could alter the debtor's rights, liabilities, options or freedom of action." *Id*. at 625. The outcome of these Claims also will impact the continued "handling and administration of the bankruptcy estate." *Id.* at 626. Accordingly, this Court has alternative jurisdiction because Plaintiffs' claims "relate[] to" a case "under title 11." 28 U.S.C. § 1334(b).

**III.     OTHER MATTERS**

28.     Defendants attach hereto true and legible copies of the process, pleadings, documents and orders served upon Defendants in connection with the Claims herein removed, namely: (1) the Complaint, filed in the Circuit Court for Baltimore City on January 14, 2015; (2) the Writ of Summons issued to Saul Ewing LLP on January 16, 2015; and (3) the Writ of Summons issued to Gary Eidelman, Esquire, on January 16, 2015.  Defendants are timely filing this Notice of Removal within thirty days of their receipt of the pleadings warranting removal.

29.     A true and correct copy of this Notice of Removal will be filed with the Clerk of Court for the Circuit Court for Baltimore City, Maryland, and will be served on counsel for all parties as required by law.

30.     Defendants, by their undersigned attorneys, pursuant to 28 U.S.C. § 157(e) and Local District Court Rule 406, hereby demand and elect a jury trial of this action for all claims triable of right by a jury.

31.     Defendants, by their undersigned attorneys, do not consent to entry of final orders or judgment by this Court, and instead reserve the right to move the District Court pursuant to 28 U.S.C. § 157(d) and Local District Court Rule 405 to withdraw the reference for the purposes, at minimum, of entering final orders or a judgment in this adversary proceeding.

WHEREFORE, Defendants Saul Ewing LLP and Gary Eidelman hereby give notice that this action, now pending in the Circuit Court for Baltimore City, has been removed to the United States Bankruptcy Court for the District of Maryland.  Defendants further give notice that: (a) this is a core bankruptcy proceeding for removal purposes; (b) Defendants do not consent to entry of final orders or judgment by this Bankruptcy Court; and (c) Defendants demand and elect a jury trial of this action.

4803843.1

Dated: February 13, 2015              Respectfully submitted,

*/s/ William J. Murphy*
William J. Murphy (U.S.D.C. Bar. No. 00497)
Conor O'Croinin (U.S.D.C. Bar. No. 280990)
Adam B. Abelson (U.S.D.C. Bar. No. 29532)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
Phone:  410-332-0444
Fax:  410-659-0436
wmurphy@zuckerman.com
cocroinin@zuckerman.com
aabelson@zuckerman.com

*Attorneys for Defendants
Saul Ewing LLP and Gary Eidelman*

14

## **CERTIFICATE OF SERVICE**

I hereby certify that this 13th day of February, 2015, I caused a copy of the foregoing Notice of Removal, exhibits thereto, and all process and pleadings filed in the underlying state court action to be served on the counsel listed below by hand delivery.

>Arnold M. Weiner
>Aron U. Raskas
>Barry L. Gogel
>Rifkin, Weiner, Livingston, Levitan & Silver, LLC
>2002 Clipper Park Road, Suite 108
>Baltimore, MD 21211
>(410) 769-8080
>
>*Attorneys for Debtor Commerce LLC*
>*and Plaintiffs Zvi Guttman,*
>*Commerce Corporation, and Richard Lessans*
>
>
>*/s/ William J. Murphy*
>William J. Murphy

4803843.1